1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  SARAH CATE HAYS, #268813
   shays@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone:  (949) 333-7777
5  Facsimile:  (949) 333-7778

6  Attorneys for Plaintiff and Chapter 7 Trustee,
   LARRY D. SIMONS

7

8          UNITED STATES BANKRUPTCY COURT

9     CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| 10  In re | Case No.  6:14-bk-17350-MH |
| 11  DEAN L. SPRINGER, SR. AND TAMI JO SPRINGER, | Chapter  7 |
| 12            Debtor. | Adv. No. |
| 13 | COMPLAINT FOR: |
| 14  LARRY D. SIMONS, Chapter 7 Trustee, | (1)    AVOIDANCE, RECOVERY, AND PRESERVATION OF INTENTIONAL |
| 15            Plaintiff, | FRAUDULENT TRANSFER [11 U.S.C. §§544, 548, 550; CAL. CIV. CODE §§3439.04, 3439.07]; |
| 16  v. | |
| 17  BLUECOAST INVESTMENTS, LTD. a/k/a BLUE COAST INVESTMENTS, LTD. a/k/a | (2)    AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFER [11 U.S.C. §§544, |
| 18  BLUE COAST ASSET MANAGEMENT, LTD., | 548, 550; CAL. CIV. CODE §§3439.04, 3439.05, |
| 19            Defendant(s). | 3439.07]; and |
| 20 | |
| 21 | (3)    AVOIDANCE, RECOVERY, AND PRESERVATION OF PREFERENCE [11 U.S.C. §§547, 550, and 551]. |
| 22 | |

23  TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE,

24  DEFENDANT, AND ALL INTERESTED PARTIES:

25        Larry D. Simons, in his capacity as Chapter 7 Trustee for the bankruptcy estate of Dean L.

26  Springer, Sr. and Tami Jo Springer, submits this Complaint for: Avoidance, Recovery, and

27  Preservation of Intentional Fraudulent Transfer; Avoidance, Recovery, and Preservation of

28  Constructive Fraudulent Transfer; and Avoidance, Recovery, and Preservation of Preference against

Defendant Bluecoast Investments, Ltd. a/k/a Blue Coast Investments, Ltd. a/k/a Blue Coast Asset Management, Ltd.

## STATEMENT OF JURISDICTION AND VENUE

1.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (F) (proceedings to determine, avoid, or recover preferences), (H) (proceedings to determine, avoid, or recover fraudulent conveyances), and (O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship).

2.      To the extent that any claim for relief in this complaint is determined to be a *Stern*-type claim or not to be a core proceeding, the Trustee consents to entry of final judgment and orders by the Bankruptcy Court.

3.      This adversary proceeding is brought pursuant to 11 U.S.C. §§ 544, 547, 548, 550, and 551 (a proceeding to avoid, recover, and preserve preferences and fraudulent transfers).

4.      Pursuant to 11 U.S.C. § 544, this adversary proceeding is also brought pursuant to California Civil Code §§ 3439 *et seq.,* the California Uniform Fraudulent Transfer Act.

5.      The Trustee, as the Chapter 7 Trustee of Debtors' bankruptcy estate, is the sole and exclusive party with standing to bring this action pursuant to 11 U.S.C. § 323.

6.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334, in that this civil proceeding arises in, arises under, and relates to the bankruptcy case pending in the United States Court for the Central District of California, Riverside Ana Division, entitled *In re Dean L. Springer, Sr. and Tami Jo Springer,* and assigned Case No. 6:14-bk-17350-MH.

7.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case in this District under Title 11 of the United States Code as provided in 28 U.S.C. §§ 1408 and 1409.

## PARTIES

8.      Larry D. Simons is the duly appointed and acting Chapter 7 Trustee ("Trustee") pursuant to 11 U.S.C. § 702 of the bankruptcy estate ("Estate") of Dean L. Springer, Sr. and Tami Jo Springer ("Debtors").

9.     Debtors are, and at all relevant times were, individuals with their permanent place of residence in the County of Riverside, State of California.

10.    Defendant Bluecoast Investment, Ltd. a/k/a Blue Coast Investments, Ltd. a/k/a Blue Coast Asset Management, Ltd. ("Blue Coast") is a company authorized to do business in the State of California, and having offices in Florida, the Seychelles, and the United Kingdom

<u>GENERAL ALLEGATIONS</u>

11.    On June 3, 2014, ("Petition Date") Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code commencing bankruptcy Case No. 6:14-bk-17350-MH ("Springer Bankruptcy").

12.    On July 6, 2007, Debtors formed Integrity Financial Group ("IFG"), a California corporation whose address as registered with the California Secretary of State is the same as Debtors' address as reflected on the Court's docket for the Springer Bankruptcy.

13.    According to Debtors' sworn bankruptcy schedules, Mr. Springer was the 50% shareholder and Mrs. Springer was the 50% shareholder of IFG.

14.    The Estate is the 100% owner of all shares of IFG.

15.    On November 30, 2012, Debtors formed World Container, Inc. ("WC"), a Nevada corporation of which Mr. Springer is listed on the Nevada Secretary of State website as President and Director and Mrs. Springer is listed as Secretary and Treasurer.

16.    According to Debtors' sworn bankruptcy schedules, Mr. Springer was the 50% shareholder and Mrs. Springer was the 50% shareholder of WC.

17.    The Estate is the 100% owner of all shares of WC.

18.    On April 1, 2016, the Trustee filed a Motion for Nunc Pro Tunc Substantive Consolidation with Debtors' Wholly-Owned Non-Debtor Corporations World Container, Inc. and Integrity Financial Group, Inc. and Preservation of Trustee Avoidance Powers ("Motion for Substantive Consolidation").

19.    On May 18, 2016, the Bankruptcy Court entered an Order granting the Trustee's Motion for Substantive Consolidation.

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

20. The Court's Order granting the Motion for Substantive Consolidation provided as follows:

[a]. The Motion is granted in its entirety;

[b]. World Container, Inc. and Integrity Financial Group, Inc. are substantively consolidated into the Bankruptcy Estate of Dean L. Springer, Sr. and Tami Jo Springer, Bankruptcy Case No. 6:14-bk-17350-MH;

[c]. The substantive consolidation is *nunc pro tunc* to and effective as of June 3, 2014;

[d]. All assets of and all funds held in bank accounts in the name of World Container, Inc., are property of the consolidated Estate;

[e]. All assets of and all funds held in bank accounts in the name of Integrity Financial Group, Inc., are property of the consolidated Estate;

[f]. All causes of actions held by World Container, Inc. and Integrity Financial Group, Inc. are preserved and constitute assets of the Springers' bankruptcy Estate;

[g]. On behalf of the consolidated Estate, the Trustee has exclusive standing to assert causes of action belonging to Debtors, World Container, Inc., and/or Integrity Financial Group, Inc.; and

[h]. On behalf of the consolidated Estate, the Trustee has exclusive standing to assert all avoidance actions arising from any pre-petition or post-petition transfers of property by Debtors, World Container, Inc., and/or Integrity Financial Group, Inc.

21. All causes of action belonging to WC or IFG constitute assets of the Estate.

22. The Trustee has exclusive standing to assert causes of action, including avoidance causes of action, arising from any pre-petition or post-petition transfers of property by Debtors, WC, or IFG.

23. The deadline to file actions for avoidance of fraudulent conveyances or preferences in the Springer Bankruptcy case, including causes of action belonging to IFG or WC, is June 3, 2016.

24. This Complaint is timely filed on June 3, 2016.

25. Between 2012 and 2014, Mr. Springer worked for Intermodal Wealth, Inc. ("Intermodal").

26. Mrs. Springer worked for Mr. Springer, IFG, and/or WC in connection with Mr. Springer's services to Intermodal.

27. Intermodal was a corporation registered in Texas by Steven Jones, who is listed on the Texas Secretary of State website as its President and Director.

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

28. John Acord operated Intermodal with Steven Jones.

29. Blue Coast conducted business with Debtors, IFG, and WC.

30. Blue Coast had direct contact with Debtors, who are residents of California.

31. Blue Coast placed its, illusory container leases, into the stream of commerce such that it reached California.

32. Blue Coast had container lease agreements with residents of California.

33. In November 2012 the Texas Securities Board issued a cease and desist letter against Steven Jones and John Acord in connection with their operation of Intermodal.

34. The Board's investigator testified that Steven Jones and John Acord were operating a Ponzi scheme through Intermodal.

35. On July 3, 2013, $10,000 was transferred to Joe Alfred Izen, Jr. from an account held in the name of WC:

| Bank | Acct# | Date | Amount | Transferee | Method |
|------|-------|------|--------|------------|--------|
| Wells Fargo | x3665 | 7/3/2013 | $10,000 | Joe Alfred Izen, Jr. | Wire |

36. Joe Alfred Izen, Jr. was the attorney who represented Mr. Springer and IFG in defending an investor fraud lawsuit relating to the Intermodal Ponzi scheme.

37. Not later than July 3, 2013, Debtors, IFG, and WC knew that they were under threat of a lawsuit.

38. On January 15, 2014, the United States Grand Jury issued an indictment against Steven Jones and John Acord (the "Jones and Acord Indictment") alleging violations of 18 U.S.C. §1349 (attempt and conspiracy), §1343 (fraud by wire, radio, or television), and §1341 (frauds and swindles) as well as 15 U.S.C. §77q(a) (use of interstate commerce for purpose of fraud or deceit) and §77x (penalties for violations of domestic securities laws).

39. On February 27, 2014, the Jones and Acord Indictment was unsealed.

40. The Jones and Acord Indictment also alleged that the named defendants were operating a Ponzi scheme using Intermodal.

/ / /

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

41.     The Intermodal scheme involved the purported sale of rail and shipping containers to investors, who would then lease the containers to shipping and transportation entities through Intermodal, receiving lease payments in return.

42.     In fact, no such shipping containers existed, and Intermodal was alleged to have been making these "lease" payments to investors using subsequent investors' money.

43.     Mr. Springer extended, continued, or participated in the Intermodal scheme through the WC and/or IFG, including entering into contracts for the purchase and lease of non-existent shipping containers.

44.     Debtors conducted their business dealings with Intermodal, its investors, Jones and Acord, and clients who entered into contract with WC or IFG through bank accounts held in the names of WC or IFG.

45.     On March 11, 2014, $27,500 was transferred to Blue Coast from an account held in the name of WC (the "Transfer"):

| Bank | Acct# | Date | Amount | Transferee | Method |
|---|---|---|---|---|---|
| Wells Fargo | x3665 | 3/11/2014 | $27,500.00 | Blue Coast Investments Ltd. | Wire |

46.     Wells Fargo Account x3665 is in the name of World Container, Inc., with an address of 9120 Double Diamond Pkwy Ste. 1269, Reno NV89521.

47.     Funds held in Wells Fargo Account x3665 constitute property in which Debtors had an interest at the time of the Transfer.

48.     On May 1, 2014, Steven Jones entered into a plea agreement (the "Jones Plea Agreement") with the United States of America, pursuant to which he agreed to plead guilty to conspiracy to commit wire fraud in connection with the Intermodal scheme.

49.     On October 1, 2014, the United States Grand Jury issued an indictment against Mr. Springer alleging conspiracy to commit mail and wire fraud, conspiracy to launder funds, and securities fraud ("Springer Indictment"), commencing Criminal Case No. K-14-20-003-S in the United States District Court for the Southern District of Texas, Houston Division (the "Criminal Case").

50.     On November 18, 2015, Mr. Springer signed a plea agreement (the "Springer Plea Agreement"), which was filed in the Criminal Case the same day.

51.   Mr. Springer pleaded guilty to count eleven of the Springer Indictment, which charged

Mr. Springer with securities fraud in violation of Sections 77q(a) and 77x of Title 25 of the United

States Code.

52.   Mr. Springer admitted in his guilty plea that:

> Intermodal Wealth, Inc. was at all times relevant a corporation based in Panama. Intermodal Wealth, Inc. had a corporate office in Houston, Texas, as well and Blue Island, Illinois. Intermodal Wealth, as offices in Panama City, Panama, Inc. was the successor to Ecoenergy Group, Inc. d/b/a Intermodal Wealth, an Illinois corporation (collectively referred to as the "Companies").

> Defendant DEAN LESTER SPRINGER, SR. ("SPRINGER"), a California resident, began as a salesman for Intermodal Wealth and later formed a company called World Container on November 30, 2012.

> Co-Defendant Steven Patrick Jones ("Jones"), a Texas resident, was the President of the Companies.

> Co-Defendant John Patrick Acord ("Acord"), a Texas resident, was the Chief Financial Officer and/or a consultant for the Companies.

> Beginning at least as early as September 2011 and continuing until in or about September 2013, Intermodal Wealth was involved in a scheme and artifice to defraud in which the company would solicit persons (the "Investors") to purchase investments in intermodal shipping containers (the "Investment"). The terms of the Investment were described as follows:

> a.   Investors purchase intermodal shipping containers from the Companies;

> b. Intermodal Wealth would manage the intermodal shipping containers and lease them to third-party businesses;

> c. The management and leasing of the intermodal shipping containers purportedly generates a profit; and

> d. Investors receive a guaranteed annualized return of at least 13% to in excess of 16% derived from the purported profit dependent upon the amount of investment funds placed with the Companies.

> The Companies made various misrepresentations and omissions of material facts to the Investors to induce them to purchase the Investment, including the following:

> a. That the Companies' Chief Financial Officer was an individual named "John Delano" when, in truth and fact, "John Delano" was a fictional name of Acord;

> b. That Investor profit payments were derived from the leasing of intermodal shipping containers to third-party businesses when, in truth and fact, investor

7

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS

4847-7263-9794, V. 1/1253-008

profit payments were predominantly, if not entirely, payments derived from funds provided by the Investors;

c. That third-party business lease agreements were between the Companies and legitimate third-parties when, in truth and fact, sham lease agreements were created with such parties to create the false appearance that Investors' intermodal shipping containers were being leased by legitimate third-party businesses;

DEAN SPRINGER formed World Container in Nevada on November 30, 2012. Through World Container, SPRINGER offered to sell securities to investors. Specifically, he promised to use investor funds to purchase shipping containers for the investors and make money for them by leasing the containers, as he had done as a salesman for Intermodal Wealth. SPRINGER told Investors that World Container was independent of Intermodal Wealth and its associated companies. In fact, SPRINGER sent the contracts, investments and money received from World Container investors to Co-Defendant Jones and Intermodal Wealth in Panama. SPRINGER did not purchase or lease containers for investors as promised. Many World Container investors were not told that Intermodal Wealth was receiving their funds, nor were they told about Jones' and Acord's criminal records, extensive civil judgments, tax liens or Security and Exchange Commission (SEC) injunctions. SPRINGER also failed to reveal to investors that he received a commission from investments from Jones and Acord.

SPRINGER conducted his business from California using the United States mails, emails, telephone calls and other means of interstate commerce. Some of the defendant's investors contacted in this manner resided in the Southern Distr5ict of Texas. SPRINGER wire transferred World container investors' funds to Intermodal Wealth bank accounts opened and operated from the Houston Division of the Southern District of Texas.

53.    The Transfer was made within 2 years before the Petition Date.

54.    Debtors, IFG, or WC made the Transfer voluntarily.

55.    Debtors, IFG, or WC made the Transfer with actual intent to hinder, delay or defraud creditors including those who had contracted with IFG, WC, and/or Intermodal in connection with the Intermodal Ponzi scheme.

56.    Debtors, IFG, or WC were, or after the dates of the Transfer became, indebted to creditors including those who had contracted with IFG, WC, and/or Intermodal in connection with the Intermodal Ponzi scheme.

57.    Neither Debtors, IFG, nor WC received anything of value from Blue Coast in exchange for the Transfer.

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS

58.     Neither Debtors, IFG, nor WC received reasonably equivalent value in exchange for the Transfer.

59.     At the time of the Transfer, Debtors, IFG, and WC were insolvent, because their liability arising from the Intermodal Ponzi scheme far exceeded the total combined assets of Debtors, IFG, and WC.

60.     At the time of the Transfer, Debtors, IFG, and WC were engaged in business and transactions, and were about to engage in business and transactions, for which any property remaining with Debtors, IFG, and WC was an unreasonably small capital.

61.     At the time of the Transfer, Debtors, IFG, and WC intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

62.     At the time of the Transfer, at a fair valuation, the sum of Debtors, IFG, and WC's debts was greater than the sum of Debtors, IFG, and WC's assets.

63.     At the time of the Transfer, Debtors, IFG, and WC were not paying their debts as they became due, because they were incurring liability for the Intermodal Ponzi fraud and were not promptly returning all so-called investments to the defrauded investors.

64.     As a result of the November 2012 Texas Securities Board cease and desist letter and the investor fraud lawsuit, at the time of the Transfer, Debtors, IFG, and WC were aware that they were threatened with suit in connection with the Intermodal Ponzi scheme.

65.     The Transfer was made within the 90 days prior to the Petition Date.

66.     In the alternative to fraudulent transfer, and to the extent that Debtors, IFG, and/or WC had a debtor-creditor relationship with Blue Coast, the transfer to Blue Coast was a preference in that it was made to a "creditor," on account of an alleged antecedent debt, while Debtor, IFG, and WC were insolvent, and the transfer enabled Blue Coast to receive more than it would have under a Chapter 7 liquidation proceeding had the transfer not been made.

<u>FIRST CLAIM FOR RELIEF</u>

(Avoidance, Recovery, and Preservation of Transfers

Made with Actual Intent to Hinder, Delay, or Defraud Creditors)

[11 U.S.C. §§ 544, 548(a)(1)(A), 550, and 551; California Civil Code §§ 3439 *et seq.*]

67.     The Trustee realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 66 inclusive, and those allegations are re-stated in connection with this Claim for Relief.

68.     The Transfer was an actually fraudulent transfer.

69.     Debtors, IFG, and/or WC had an ownership interest in funds held in Wells Fargo Account x3665.

70.     In the 90 days prior to the Petition Date, Debtors, IFG, and/or WC made transfers of interests in property to Blue Coast totaling not less than $27,500 ("Transfer").

71.     Blue Coast is the initial transferee of the Transfer.

72.     Debtors, IFG, and/or WC transferred at least $27,500 to Blue Coast with actual intent to hinder, delay, or defraud creditors to whom it was indebted at the time of the Transfer or to which it became indebted after the date of the Transfer.

73.     Before the Transfer was made, Debtors, IFG, and/or WC knew that they were or soon would be under threat of suit for the Intermodal Ponzi scheme.

74.     Debtors, IFG, and/or WC received no consideration for the Transfer.

75.     The value of the consideration received by Debtors, IFG, and/or WC for the Transfer was not reasonably equivalent to the value of the funds transferred.

76.     Debtors, IFG, and/or WC did not receive reasonably equivalent value in exchange for the Transfer because Blue Coast neither transferred property to Debtors, IFG, and/or WC in exchange for the Transfer nor deemed any antecedent debt satisfied as a result of the Transfer.

77.     Debtors, IFG, and/or WC were insolvent on the date of the Transfer or became insolvent as a result of the Transfer.

78.     The Transfer occurred shortly before a substantial debt was incurred.

79.     Debtors, IFG, and/or WC understood when the Transfer were made that, because of Debtors, IFG, and/or WC's financial condition, the payments to Blue Coast meant that Debtors, IFG, and/or WC's creditors would not be paid in full.

/ / /

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

80. The Transfer was an actual fraudulent transfer avoidable pursuant to 11 U.S.C. §548(a)(1)(A).

81. The Trustee may avoid any transfer of property of Debtors, IFG, or WC pursuant to 11 U.S.C. §544(a).

82. The Trustee may avoid any transfer of property of Debtors, IFG, or WC pursuant to Cal. Civ. Code §§3439.04 and 3439.07.

83. The Trustee may avoid the Transfer as made with actual intent to hinder, delay, or defraud: (a) during the four year period prior to the Petition Date pursuant to 11 U.S.C. § 544(a) and California Civil Code §§ 3439 et seq.; and (b) during the two year period prior to the Petition Date pursuant to 11 U.S.C. § 548(a)(1)(A).

84. The Trustee may recover the Transfer to the extent the Transfer is avoided or, if the Court so orders, the value of the Transfer pursuant to 11 U.S.C. §550.

85. Any transfer avoided by the Court is preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §551.

<u>SECOND CLAIM FOR RELIEF</u>

(Avoidance, Recovery, and Preservation of Constructively Fraudulent Transfers)

[11 U.S.C. §§ 544, 548(a)(1)(B), 550, and 551; California Civil Code §§ 3439 et seq.]

86. The Trustee realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 66, inclusive, and those allegations are re-stated in connection with this Claim for Relief.

87. The Transfer was a constructively fraudulent transfer.

88. Debtors, IFG, and/or WC had an ownership interest in funds held in Wells Fargo Account x3665.

89. Debtors, IFG, and/or WC transferred at least $27,500 to Blue Coast.

90. Debtors, IFG, and/or WC received no consideration for the Transfer.

91. The value of the consideration received by Debtors, IFG, and/or WC for the Transfer was not reasonably equivalent to the value of the funds transferred.

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

92. Debtors, IFG, and/or WC were insolvent or became insolvent shortly after the Transfer was made.

93. The Transfer occurred shortly before a substantial debt was incurred.

94. Debtors, IFG, and/or WC knew at the time of the Transfer that they would incur debts beyond their ability to pay as they matured or became due.

95. Debtors, IFG, and/or WC were insolvent on the date of the Transfer or became insolvent as a result of the Transfer for at least the following reasons:

  a) At the time the Transfer was made, at fair valuations the sum of Debtors, IFG, and/or WC's debts was greater than all of Debtors, IFG, and/or WC's assets;

  b) At the time the Transfer was made, Debtors, IFG, and/or WC were generally not paying their debts as they become due;

  c) Around the time the Transfer was made, Debtors, IFG, and/or WC were engaged in transactions for which any property remaining with Debtors, IFG, and/or WC was an unreasonably small capital;

  d) Around the time the Transfer was made, Debtors, IFG, and/or WC engaged or was about to engage in a business or a transaction for which the remaining assets of Debtors, IFG, and/or WC were unreasonably small in relation to the business or transaction;

  e) Debtors, IFG, and/or WC did not have sufficient cash assets or income to meet their existing obligations at the time the Transfer was made; and

  f) At the time the Transfer was made, Debtors, IFG, and/or WC intended to incur and subsequently did incur debts that would be – and that Debtors, IFG, and/or WC believed or knew would be, or should have believed or known would be – beyond Debtors, IFG, and/or WC's ability to pay as such debts matured or became due.

96. Debtors, IFG, and/or WC understood when the Transfer was made that, because of Debtors, IFG, and/or WC's financial condition, the payment to Blue Coast meant that Debtors, IFG, and/or WC's creditors would not be paid in full.

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

97.     At least one of Debtors, IFG, and/or WC's creditors at the time of the Transfer remained a creditor of Debtors, IFG, and/or WC on the Petition Date.

98.     Blue Coast knew or should have known that it did not give Debtors, IFG, and/or WC anything of value in exchange for the Transfer.

99.     Blue Coast therefore did not take the Transfer for value or in good faith.

100.    The Trustee may avoid the Transfer as made with constructive fraud: (a) during the four year period prior to the Petition Date pursuant to 11 U.S.C. §544(a) and California Civil Code §§ 3439 et seq.; and (b) during the two year period prior to the Petition Date pursuant to 11 U.S.C. § 548(a)(1)(B).

101.    The Trustee may recover all avoided transfers or the value of the avoided transfers pursuant to 11 U.S.C. § 550.

102.    The Trustee may preserve all avoided transfers for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

THIRD CLAIM FOR RELIEF

(Avoidance, Recovery, and Preservation of Preferences)

[11 U.S.C. §§ 547, 550, and 551]

103.    The Trustee realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 66, inclusive, and those allegations are re-stated in connection with this Claim for Relief.

104.    The Transfer was a preference.

105.    Debtors, IFG, and/or WC had an ownership interest in funds held in Wells Fargo Account x3665.

106.    Debtors, IFG, and/or WC transferred at least $27,500 to Blue Coast in the 90 days prior to the Petition Date.

107.    To the extent that Debtor, IFG, or WC had a debtor-creditor relationship with Blue Coast, Blue Coast was Debtors', IFG's, and WC's creditor at the time of the Transfer.

/ / /

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

108. Debtors, IFG, and/or WC were insolvent or became insolvent shortly after the Transfer was made.

109. The Transfer occurred shortly before a substantial debt was incurred.

110. Debtors, IFG, and/or WC were insolvent on the date of the Transfer or became insolvent as a result of the Transfer for at least the following reasons:

    a)    At the time the Transfer was made, at fair valuations the sum of Debtors, IFG, and/or WC's debts was greater than all of Debtors, IFG, and/or WC's assets;

    b)    At the time the Transfer was made, Debtors, IFG, and/or WC were generally not paying their debts as they became due;

    c)    Around the time the Transfer was made, Debtors, IFG, and/or WC were engaged in transactions for which any property remaining with Debtors, IFG, and/or WC was an unreasonably small capital;

    d)    Around the time the Transfer was made, Debtors, IFG, and/or WC engaged or was about to engage in a business or a transaction for which the remaining assets of Debtors, IFG, and/or WC were unreasonably small in relation to the business or transaction;

    e)    Debtors, IFG, and/or WC did not have sufficient cash assets or income to meet their existing obligations at the time the Transfer was made; and

    f)    At the time the Transfer was made, Debtors, IFG, and/or WC intended to incur and subsequently did incur debts that would be – and that Debtors, IFG, and/or WC believed or knew would be, or should have believed or known would be – beyond Debtors, IFG, and/or WC's ability to pay as such debts matured or became due.

111. As a result of the Transfer, Blue Coast received more than it would have received in a Chapter 7 liquidation had the Transfer not been made.

112. The Trustee may avoid the Transfer as a preference during the 90 day period prior to the Petition Date pursuant to 11 U.S.C. § 547(b)(4)(A).

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

113.    The Trustee may recover all avoided transfers or the value of the avoided transfers pursuant to 11 U.S.C. § 550.

114.    The Trustee may preserve all avoided transfers for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

PRAYER

The Trustee prays that this Court enter Judgment as follows:

ON THE FIRST CLAIM FOR RELIEF

115.    That any and all transfers made by Debtors, IFG, and/or WC to Blue Coast during the four year period prior to the Petition Date be avoided pursuant to 11 U.S.C. § 544(a) and California Civil Code §§ 3439 et seq. as having been made with actual intent to hinder, delay, and defraud creditors;

116.    That any and all transfers made by Debtors, IFG, and/or WC to Blue Coast during the two year period prior to the Petition Date be avoided pursuant to 11 U.S.C. § 548(a)(1)(A) as having been made with actual intent to hinder, delay, and defraud creditors;

117.    That the Trustee recover the avoided transfer or a money judgment in an amount equal to the sum of the avoided transfers pursuant to 11 U.S.C. § 550; and

118.    That any and all transfer to Blue Coast be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

ON THE SECOND CLAIM FOR RELIEF

119.    That any and all transfers made by Debtors, IFG, and/or WC to Blue Coast during the four year period prior to the Petition Date be avoided pursuant to 11 U.S.C. § 544(a) and California Civil Code §§ 3439 et seq. as having been constructively fraudulent;

120.    That any and all transfers made by Debtors, IFG, and/or WC to Blue Coast during the two year period prior to the Petition Date be avoided pursuant to 11 U.S.C. § 548(a)(1)(B) as having been constructively fraudulent;

121.    That the Trustee recover the avoided transfer or a money judgment in an amount equal to the sum of the avoided transfers pursuant to 11 U.S.C. § 550; and

/ / /

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008

1    122.    That any and all transfers to Blue Coast be preserved for the benefit of the Estate

2    pursuant to 11 U.S.C. § 551.

3                              ON THE THIRD CLAIM FOR RELIEF

4    123.    That any and all transfer made by Debtors, IFG, and/or WC to Blue Coast during the 90

5    day period prior to the Petition Date be avoided pursuant to 11 U.S.C. § 547 as having been a

6    preference;

7    124.    That the Trustee recover the avoided transfers or a money judgment in an amount equal

8    to the sum of each of the avoided transfers pursuant to 11 U.S.C. § 550; and

9    125.    That any and all transfer to Blue Coast be preserved for the benefit of the Estate

10   pursuant to 11 U.S.C. § 551.

11                              ON ALL CLAIMS FOR RELIEF

12   126.    For pre-judgment interest at the maximum rate allowed by law;

13   127.    For costs incurred by the Trustee in prosecuting this action; and

14   128.    For such other and further relief as the Court may deem just and proper.

15

16   DATED:  June 3, 2016                    MARSHACK HAYS LLP

17                                          By: _____
18                                              D. EDWARD HAYS
                                                SARAH CATE HAYS
19                                              Attorneys for Plaintiff and Chapter 7 Trustee,
                                                LARRY D. SIMONS

20

21

22

23

24

25

26

27

28

COMPLAINT FOR AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS
4847-7263-9794, V. 1/1253-008